**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Jordan,<br><br>    Plaintiff,<br><br>v.<br><br>Freedom National Insurance Services Incorporated,<br><br>    Defendant. | No. CV-16-00362-PHX-DLR<br><br>**ORDER** |

  Plaintiff has filed a motion for class certification. (Doc. 22.) The motion is fully briefed. For the reasons stated below, the motion is granted.[1]

## **BACKGROUND**

  On February 10, 2015, Plaintiff Sarah Jordan entered into an agreement with Defendant Freedom National Insurance Services Incorporated (Freedom) to purchase car insurance. (Doc. 1, ¶ 14.) In connection with the agreement, Jordan signed an "Authorization Agreement for Auto-Debit Payment Method" (Authorization Agreement), which set up automatic recurring "preauthorized electronic fund transfers" out of her bank account. (*Id.*, ¶¶ 15-16.) By signing the Authorization Agreement, Jordan agreed that Freedom "will not be responsible for claims relating to the debit or credit of my account[.]" (*Id.*, ¶ 18; Doc. 1-1 at 2.) Jordan alleges that the Authorization Agreement is

---

  [1] Plaintiff's request for oral argument is denied. The issues are fully briefed, and the Court finds oral argument will not aid the resolution of the motion. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b).

based on a template that Freedom has used in contracting with over forty other individuals in the United States. (Doc. 1, ¶¶ 23-24.)

On February 9, 2016, Jordan brought suit alleging that the Authorization Agreement violates the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 et seq. (*Id.*, ¶ 19.) EFTA provides that "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l. Jordan alleges that the Authorization Agreement's provision that Freedom shall not be responsible for any claims relating to the debit or credit her account violates § 1693l. She now seeks to certify the following class under Fed. R. Civ. P 23: "All individuals in the United States who, in the year prior to the filing of this complaint, signed an agreement with Defendant based on the Template." (Doc. 22 at 6.)

## LEGAL STANDARD

"The decision to grant or deny class certification is within the trial court's discretion." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Pursuant to Fed. R. Civ. P. 23, "[a] class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it must also fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23(a) requires that the moving party demonstrate: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Where, as here, the plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)). The party seeking certification bears the burden of demonstrating that she has met the requirements of Rule 23, *see id.*, and the court "will not consider whether the plaintiff will prevail on the merits," *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 239 (D. Ariz. 2001).

## ANALYSIS

Jordan argues the putative class should be certified because it satisfies all the requirements of Rule 23(a) and (b)(3). Freedom concedes that the numerosity and adequacy requirements of Rule 23(a) are met. (Doc. 29 at 7.) It argues the remaining requirements cannot be satisfied because an individualized analysis is required to determine whether each class member waived her rights under EFTA by signing the Authorization Agreement. The Court will address the waiver issues before turning to the requirements of Rule 23.

**I. Waiver**

The crux of Jordan's case is that by signing the Authorization Agreement, she waived her right to sue Freedom for violating EFTA. Under Arizona law, waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). Freedom asserts that under Arizona law, the Court will have to individually determine whether each class member knew of her EFTA rights and intended to relinquish those rights by signing the Authorization Agreement. (Doc. 29 at 9.) It asserts testimony on these issues must be taken from each class member, thereby negating the benefits of a class action.

EFTA prohibits any "agreement[s] between a consumer and any other person . . .

1  contain[ing] any provision which constitutes a waiver of any right conferred for cause of
2  action created by this subchapter." 15 U.S.C. § 1693l.  Commonly referred to as the
3  "anti-waiver provision," *see, e.g.*, *Bultemeyer v. Fitness Alliance, LLC*, No. CV-12-2619-
4  PHX-LOA, 2014 WL 667585, at *2 (D. Ariz. Feb. 20, 2014), the statute prohibits
5  agreements that preclude consumers from exercising rights conferred under EFTA, *see*
6  *Murphy v. Law Offices of Howard Lee Schiff, P.C.*, No. 13-10724-RWZ, 2014 WL
7  710959, at *2 (D. Mass. Feb. 25, 2014) (finding that the plaintiff stated a claim under §
8  1693l where the agreement in question prohibited consumer from asserting his "EFTA-
9  conferred rights").  The use of such an agreement by any party is an actionable violation.
10 15 U.S.C. § 1693m(a).

11  In its attempt to defeat class certification, Freedom frames the issue incorrectly,
12 shifting the focus from the provision in the Authorization Agreement to the consumer's
13 knowledge and intent at the time of signing.  The issue, however, is not whether each
14 class member that signed the Authorization Agreement knowingly and intentionally
15 decided to waive their rights under EFTA.  Rather, the issue is whether the Authorization
16 Agreement contained a provision requiring the consumer to give up, whether voluntarily
17 or not, their EFTA-conferred rights.  Jordan argues that by simply signing the agreement,
18 she gave up her EFTA right to bring suit against Freedom for disputes arising out of the
19 debit or credit of her account.  The statute is clear that any such agreements are
20 prohibited regardless of the subjective knowledge and intent of the consumer. *See* 15
21 U.S.C. § 1693l.[2]

22  Freedom's argument that common law principles of waiver in the estoppel context
23 are implicated in this inquiry is belied by the language of § 1693l.  The statute does not
24 require that the consumer have knowledge of her EFTA-conferred rights.  In addition,
25 Freedom cites no case, and the Court is aware of none, in which a court has considered

---

[2] In keeping with this theme, Freedom also argues that analyzing waiver would implicate various state laws because the class is not limited to Arizona.  (Doc. 29 at 2.) This is incorrect, given that the inquiry focuses on the provision at issue, not the subjective belief and intent of the consumer.

- 4 -

subjective intent in the § 1693l analysis.[3]

As such, the Court concludes that determining whether each class member waived her EFTA-conferred rights depends on two issues: (1) whether the consumer signed the Authorization Agreement, and (2) whether the Authorization Agreement violates EFTA by precluding class members from exercising their EFTA-conferred rights.

**II. Rule 23(a) Requirements**

As noted above, Freedom concedes the numerosity and adequacy requirements of Rule 23(a), and the Court finds that they are satisfied. Jordan alleges that there are at least forty putative class members, a number that "generally satisfies the numerosity requirement[.]" *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 260, 365 (D. Ariz. 2009). In addition, the Court finds the adequacy requirement is met given that Jordan and her counsel have no "conflicts of interest with other class members" and the class will be "vigorously" represented. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). The Court now turns to the remaining requirements of Rule 23(a): commonality and typicality.

"A proposed class satisfies the commonality requirement if there is at least one question of fact or law common to the class." *Horton*, 266 F.R.D. at 365; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

---

[3] Jordan cites several cases that she claims suggest that subjective intent is irrelevant. *See, e.g.*, *Miller v. Interstate Auto Grp., Inc.*, No. 14-cv-116-slc, 2015 WL 1806815, at *5 (W.D. Wis. April 21, 2015) (analyzing § 1693l without discussing subjective intent); *Murphy*, 2014 WL 710959, at *2 (finding plaintiff stated a claim by asserting that the provision required him to waive an EFTA-conferred right and declining to consider argument regarding subjective intent at the 12(b) stage); *Baldukas v. B & R Check Holders, Inc.*, No. 12-cv-01330-CMA-BNB, 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012) (finding the plaintiff stated a claim under § 1693l by alleging that the provision precluded her from exercising EFTA-conferred rights and not discussing subjective intent). None of these cases, however, appear to have addressed this issue because it was not raised or it was raised at an inappropriate stage of the case. Regardless, the language of § 1693l clearly does not require analyzing the subjective intent of the consumer.

F.3d 1168, 1175 (9th Cir. 2010) (internal quotations omitted).  The tests are similar, as both the commonality and typicality "requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).

The Court finds Jordan satisfies both the commonality and typicality requirements of Rule 23(a).  The common thread running through the putative class is that all class members signed a similar Authorization Agreement that Jordan alleges violates EFTA.  The class members are all subject to the same course of conduct and allegedly suffered the same injury.  The Court will be faced with analyzing the same questions of law and fact for the entire class, whether the class member signed a similar Authorization Agreement and whether the Authorization Agreement violates EFTA.  As such, commonality and typicality are satisfied, and Jordan has demonstrated that the putative class meets all the requirements of Rule 23(a).

**III.  Rule 23(b)(3) Requirements**

In order to certify the putative class, Jordan must also satisfy Rule 23(b)(3)'s predominance and superiority requirements.  Fed. R. Civ. P. 23(b)(3).  The Court finds both requirements are satisfied.

Regarding predominance, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted).  This inquiry "focuses on the relationship between the common and individual issues," and is satisfied where "[a] common nucleus of facts and potential legal remedies dominates [the] litigation."  *Id.*  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Valentino*, 97 F.3d at 1234.

Here, common questions of law and fact predominate over any individual issues

that may arise during litigation. The same evidence will be used to establish whether each class member signed the Authorization Agreement, and the Court will be left with a purely legal question: whether the provision in the Authorization Agreement violates EFTA. Most, if not all, of the claims of the putative class members will be resolved by answering this question, and certifying the class will promote judicial economy. As such, the Court finds the predominance requirement is satisfied.

With respect to superiority, this requirement is satisfied if class certification vindicates "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods.*, 521 U.S. at 617 (internal quotations omitted). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Here, violations of EFTA provide for up to $1,000 in statutory damages, 15 U.S.C. 1693m, which is hardly enough incentive for individuals to prosecute their claims in federal court. No individual testimony is required to establish damages, and the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

**IV. Conclusion**

After conducting a rigorous analysis of Rule 23's requirements, the Court finds the putative class is appropriate for certification. *Valentino*, 97 F.3d at 1233. Sarah Jordan is hereby appointed as Class Representative and Thompson Consumer Law Group, PLLC is appointed as Class Counsel.

**IT IS ORDERED** that Jordan's motion for class certification, (Doc. 22), is **GRANTED**. The following class is certified under Rule 23: All individuals in the United States who, in the year prior to the filing of this complaint, signed an agreement with Defendant based on the Template.

//

//

**IT IS FURTHER ORDERED** that Sarah Jordan is appointed as the Class Representative and that the law firm Thompson Consumer Law Group, PLLC is appointed as Class Counsel.

Dated this 26th day of September, 2016.

_____
Douglas L. Rayes
United States District Judge